IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Angela Salyer, | ) | C.A.: 4:22-cv-01485-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Citibank, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant Citibank, N.A.'s ("Citibank" or "Defendant") Motion to Compel Arbitration and Stay Action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. (DE 13.) Plaintiff Angela Salyer ("Salyer" or "Plaintiff") has sued Citibank alleging two violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and a violation of the Truth-in-Lending Act, 15 U.S.C. § 1602 et seq. ("TILA"), arising out of alleged fraudulent opening or fraudulent use of eight credit accounts with Citibank.[1] (DE 1.) Citibank contends that Salyer's FCRA and TILA claims are governed by a valid and enforceable arbitration agreement; therefore, this Court should compel Salyer to arbitrate her claims. (DE 17.) The parties have fully briefed the motion; therefore, it is ripe for review and decision. After reviewing the motion and memoranda submitted, the Court grants Citibank's Motion to Compel Arbitration and Stay Action (DE 13) in part for the reasons stated herein.

---

[1]    Salyer contends Citibank 1) failed to investigate the accuracy of information it reported to consumer reporting agencies in violation of 15 U.S.C. §1681s-2(b), 2) Citibank "violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading[,]" and 3) Citibank did not comply with 15 U.S.C. §1643(b), which required it "to show that the use of Plaintiff's card was authorized." (DE 1, pp. 19-23.)

1

**BACKGROUND**

This lawsuit involves eight credit accounts, six of which Salyer alleges were in fact her accounts but were fraudulently used without her knowledge or permission and two of which were fraudulently opened in her name.[2] Each of the accounts is subject to written terms and conditions that are reflected in written agreements, as amended from time to time (the "Card Agreements"). (DE 13-1, ¶ 5; DE 13-4, ¶ 5.)  Salyer was provided Card Agreements when the accounts were opened.  (DE 13-1, ¶¶ 7, 13, 21, 27; DE 13-4, ¶¶ 6, 10, 15, 20.)  Furthermore, Salyer also received updated versions of the Card Agreement for at least two of the Accounts, including for the 9707 Account in August 2018 (DE 13-1, ¶¶ 18-19, DE 13-2, pp. 8-25), and for the 8383 Account in June 2020 (DE 13-1, ¶¶ 28-32, DE 13-3, pp. 25-46.)

Each of the operative Card Agreements for Salyer's accounts contains an arbitration provision requiring arbitration of any claims "arising out of or related to" Salyer's Accounts or Salyer's relationship with Citibank (the "Arbitration Agreement").  The 4853 Account, 9707 Account, 0307 Account, and 8383 Account provide the following:

> This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial, or initiate or participate in a class action.  In arbitration, disputes are resolved by an arbitrator, not a judge or jury.  Arbitration procedures are simpler and more limited than in court.  This

---

[2]     The eight credit accounts issued by Citibank are as follows: (1) a Citibank Mastercard account currently ending in 4853 that was issued in February 2019 (the "4853 Account"); (2) a Citibank Mastercard account currently ending in 9707 that was issued in August 2016 (the "9707 Account"); (3) a Citibank Mastercard account currently ending in 8383 that was issued in March 2020 (the "8383 Account"); (4) a Costco Visa Anywhere account currently ending in 0307 issued in July 2016 (the "0307 Account"); (5) a Tractor Supply account currently ending in 0601 issued in March 2019 (the "Tractor Supply Account"); (6) an ExxonMobil account currently ending in 9116 issued in May 2019 (the "ExxonMobil Account"); (7) a Best Buy Visa account currently ending in 8212 issued in February 2020 (the "Best Buy Account"); and (8) a Wayfair account currently ending in 5615 issued in September 2020 (the "Wayfair Account").  (DE 1, pp. 3-4.)  Salyer maintains the 8383 Account and the Wayfair Account were fraudulently opened in her name.  (DE 1, p. 4.)

Although Salyer's factual allegations in her Amended Complaint (DE 10) itemize and differentiate the fraudulently used as opposed to the fraudulently opened accounts, Salyer's FCRA and TILA causes of action do not segregate or isolate the same.

arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

Covered claims

- You or we may arbitrate *any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship* called 'Claims.'
- If arbitration is chosen by any party, neither you nor we have the right to litigate that Claim in court or have a jury on that claim.

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law, . . .

(DE 13-1, p. 24; DE 13-2, p. 20; DE 13-2, p. 40; DE 13-3, p. 41.) Similarly, the Tractor Supply Account, the ExxonMobil Account, Best Buy Account, and Wayfair Account all require arbitration and include nearly substantively identical provisions. (DE 13-4, p. 15, 36-37, 57-58, and 118-119.)

## **LEGAL STANDARD**

The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005). In the Fourth Circuit, a party can compel arbitration if he can establish: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002) (citation omitted); see also 9 U.S.C. § 4. "A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall

within its purview." Am. Gen. Life & Acc. Ins. Co., 429 F.3d at 87. "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" Adkins, 303 F.3d at 500 (citing 9 U.S.C. § 3). "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001).

## DISCUSSION

The Court finds that Citibank has established the elements to compel arbitration. See Atkins, 303 F.3d at 500–01. First, Citibank has established there is a dispute between the parties as Salyer's complaint includes three causes of action against Citibank. (DE 1.) Second, all three causes of action against Citibank are covered under the arbitration clauses, as they relate to statutory provisions under the FCRA and TILA. Third, the credit accounts inherently relate to interstate commerce. Thus, the transactions are related to interstate or foreign commerce. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) ("[T]he [FAA] provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause' . . . 'that is, within the flow of interstate commerce.'") (internal citation omitted). Finally, Salyer opposes arbitration contending "she was the victim of repeated and prolific identity theft which resulted in the fraudulent opening and use of two of the Citibank accounts at issue and the fraudulent take over and use of the other six accounts" and therefore, "she clearly never agreed to any arbitration clause allegedly associated with those accounts." (DE 17, p. 2.) Since all of Salyer's allegations fall within the purview of a valid arbitration agreement, the Court must compel arbitration. See Wood, 429 F.3d at 87.

Nevertheless, Salyer opposes the motion arguing, among other things when there is "disputed evidence as to whether the parties have agreed to an arbitration clause, that issue must

be submitted to a jury for determination, and the Court may not resolve the issue on its own." (DE 17, p. 2.) To the contrary, Salyer has not identified a factual dispute regarding an agreement to arbitrate or the reach of the arbitration agreement. In fact, Salyer concedes she "does not *per se* contest the validity of the arbitration agreements related to the six accounts[;]" instead, she "contests their enforceability in light of" the alleged identity theft. (De 17, p. 10.) Nevertheless, while Salyer attempts to segregate the two fraudulently opened accounts from the six fraudulently used accounts to suggest there was no agreement to arbitrate, this illusion is unavailing. Salyer's FCRA and TILA causes of action are not predicated on this distinction. Rather, the gravamen of Salyer's claims is based on Citibank's failure to investigate the accuracy of the information it reported to consumer reporting agencies, failing to notify all consumer reporting agencies that the reporting of the accounts was inaccurate, and failing to comply with 15 U.S.C. §1643(b). (DE 1, pp. 19-23); see also n. 1 supra.[3]

Furthermore, Salyer's approach would require a blind eye to the plain language of the arbitration provisions because Salyer's "relationship" with Citibank invariably includes all claims, including any claims predicated on the 8383 and Wayfair Accounts. See, e.g., Cara's Notions. Inc. v. Hallmark Cards. Inc., 140 F.3d 566, 569 (4th Cir. 1998) (noting a common flaw regarding a claim not to arbitrate is a failure to "address[] the language of the arbitration clause itself.") Here, the language of the arbitration provisions are conspicuously noted and very broad. Specifically, they apply to "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship called 'Claims'" and further include claims based on "fraud." (Citations to the record omitted.)

---

[3] Even if the Court were persuaded by Salyer's surgical approach to Citibank's motion, at best, arbitration would be required for at least the six fraudulently used accounts. However, this bifurcated approach would not overcome the fact that the pleadings do not reflect the same.

**CONCLUSION**

For the foregoing reasons, notwithstanding Citibank's motion to stay litigation pending arbitration, the Court dismisses this action because all of Salyer's causes of action against Citibank are subject to arbitration. Therefore, Citibank's Motion to Compel Arbitration (DE 13) is granted in part, and the Court compels the parties to arbitrate and dismisses Salyer's action without prejudice.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

December 2, 2022
Florence, South Carolina